152 Cal.App.3d 894 (1984)
199 Cal. Rptr. 753
Estate of VELMA CHURCH CLARK, Deceased.
DAVID C. HANTS, as Executor, etc., Petitioner and Respondent,
v.
JEAN PIERRE BORDERRE, Claimant and Respondent; RALPH L. HANTS et al., Objectors and Appellants.
Docket No. 23085.
Court of Appeals of California, Third District.
March 7, 1984.
*895 COUNSEL
Feldman, Waldman & Kline, Leland R. Selna, Jr., Martha J. Shaver, Patricia S. Mar and Lowell Finley for Objectors and Appellants.
Seaman, Seaman & Brodeur and David A. Hugo for Petitioner and Respondent.
Trezza, Ithurburn & Steidlmayer and John J. Trezza for Claimant and Respondent.
OPINION
EVANS, J.
Velma Church Clark (decedent) died testate on November 6, 1981. Her will was admitted to probate and on December 1, 1981, Jack Burford (Burford) was appointed executor. Letters testamentary issued the following day.
The crux of this appeal involves the fifth, sixth, and seventh paragraphs of the decedent's will. Each paragraph granted claimant and respondent Jean Borderre a testamentary option to purchase certain real property. Although the will specified the purchase price for each parcel, it was silent as to the method and time for the exercise of the options.
In December 1981, Burford convened a meeting of the potential heirs and devisees, which was attended by Borderre. At the meeting the options granted to Borderre under the terms of the will were discussed. At that time, Borderre indicated he had not decided whether he would exercise the options.
*896 In March 1982, Burford resigned as executor and in early April 1982, David Hants (Hants), decedent's grandson and a residuary devisee under the will, was appointed executor.[1] Later that month, Hants contacted Borderre to discuss Borderre's intentions concerning the options. Because of potential tax consequences to the estate, Hants suggested Borderre consider the possibility of leasing the property in lieu of exercising the options to purchase. At the conclusion of the meeting, Borderre again indicated that he still had not decided whether he would purchase the property.
On June 18, 1982, more than six months after the issuance of letters testamentary, Borderre advised Hants of his decision to exercise the options. Hants informed Borderre the exercise of the options was not timely, as the six-month period provided in Probate Code section 854 for the exercise of an option had expired.
In February 1983, Hants filed a petition for instructions seeking a determination of the right, if any, of Borderre to exercise the options granted him under the will. Borderre filed objections to the petition and also filed a petition for preliminary distribution. Objections to Borderre's petition were filed by all of the residuary devisees and beneficiaries except Hants. Following hearing and argument, the trial court held that although Borderre had not complied with the procedures set forth in Probate Code section 854, that failure did not extinguish the right to exercise the options and granted the petition for partial distribution and ordered Hants to take such steps as were necessary to carry out the conveyance authorized by the options. This appeal ensued.

I
There is no question of the efficacy of the testamentary options granted Borderre to purchase real property owned by decedent. The issue presented is whether Borderre's failure to comply with the provisions of Probate Code section 854, particularly the time limitations set forth therein, precluded him from later exercising the options.
Probate Code section 854 (hereafter all statutory references are to the Probate Code) provides: "When any option to purchase real or personal property is given in a will duly admitted to probate the optionee may petition the court for an order authorizing the executor or the administrator with the will annexed to transfer or convey such property upon compliance with the terms and conditions stated in the will.
*897 "The clerk shall set the petition for hearing by the court and give notice thereof for the period and in the manner required by Section 1200 of this code.
"Such order shall not be made unless the court shall find that the rights of creditors will not be impaired or shall require bond in an amount and with such surety as the court shall direct or approve. The order shall not be entered unless the court shall find that all inheritance taxes payable in said proceedings have been paid or the State Controller, an inheritance tax attorney or a subordinate inheritance tax attorney has, in writing, consented to the entry of the order by the court.
"The petition must be filed within any time limitations stated in the will, or, in any event, within six months after the issuance of letters testamentary or letters of administration with the will annexed; provided, however, that if any time limitation in the will is measured from the death of the testator, such time shall be extended by the period between such death and the issuance of such letters but in no event to more than six months after such issuance." (Italics added.)
(1a) As we read the statute, the phrase "may petition" indicates the optionee has a choice whether or not to exercise the option; but if the optionee elects to do so, he must exercise the option within the time limitations stated in the will or, in any event, within six months after issuance of letters testamentary. Section 854 was enacted in order to promote the early vesting of the estate. Thus, the only conclusion that can be reached is that a testamentary option must be exercised within the time limitations set forth in the statute.[2] Here, letters testamentary were issued on December 2, 1981, and pursuant to section 854, Borderre had until June 2, 1982, to exercise the options. Having failed to do so, the options lapsed.
Borderre's reliance on Estate of Secreto (1982) 134 Cal. App.3d 938 [184 Cal. Rptr. 873], is misplaced. Secreto does not provide that the time limitations set forth in section 854 may be ignored. In Secreto, while the optionee/executor did not invoke the statutory procedures set forth in section *898 854, he did give notice of his intent to exercise the option in accord with the method and within the time limitations established by the will. (134 Cal. App.3d at pp. 941-942, 947.)
In contrast, the instant will did not provide any time period for the exercise of the options, and Borderre did not give notice until after the six-month period provided in section 854 had expired. (2) (See fn. 3.), (1b) His failure in this regard compels the conclusion that he waived his right to exercise the options.[3]

II
Borderre asserts Hants' status as executor and as a residual beneficiary created a conflict of interest and that as a consequence, Borderre should be allowed to exercise the options notwithstanding the expiration of the six-month period. We disagree. It is unquestioned that Hants did ask that Borderre consider leasing the property in order to save the estate a substantial amount of estate taxes, and that Hants, as a residual beneficiary, stood to gain if the options were not exercised. The fact remains, however, that Hants was the successor executor. The idea of leasing the property in lieu of purchase in order to reduce the taxes on the estate was originally suggested in December 1981 by Burford, the original executor. Hants became the substitute executor after that proposal had been made by Burford.
During the period following the decedent's death, Borderre had every opportunity to exercise the options had he desired. His failure to exercise the options in time cannot be blamed on any violation of duty by Hants as executor of the estate, but rather on Borderre's inability to decide whether or not he wished to exercise the options.
*899 The judgment (order) is reversed; the trial court is directed to enter an order denying Borderre's petition for preliminary distribution and to enter an order consonant with this opinion.
Regan, Acting P.J., and Blease, J., concurred.
A petition for a rehearing was denied April 2, 1984, and the petition of claimant and respondent for a hearing by the Supreme Court was denied May 31, 1984. Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.
NOTES
[1] A codicil to the will provided that if Burford were to "cease to act as" executor, Hants was to be appointed.
[2] Our analysis comports, as it must, with the intent of the Legislature. In an April 30, 1963, letter urging Governor Brown to sign Senate Bill No. 197, 1963 Regular Session, which added section 854 to the Probate Code, Senator Grunsky, the bill's author, stated there was no California statute or appellate court case dealing specifically with the procedure where an option to purchase real property is given to a devisee in a will. The letter continues: "[T]his bill adds Section 854 to the Probate Code establishing a statutory procedure whereby the optionee can exercise the option. Safeguards are set forth for adequate notice, for the protection of creditors and for the protection of the Inheritance Tax Department. [¶] A time limit is placed on the exercise of the option so that it must be exercised prior to the final distribution of the estate in order to promote the early vesting of the estate." (Italics added.)
[3] Our analysis finds further support in the rule of statutory construction that statutes relating to the same subject matter are to be construed together and harmonized. (International Business Machines v. State Bd. of Equalization (1980) 26 Cal.3d 923, 932 [163 Cal. Rptr. 782, 609 P.2d 1].) Senate Bill No. 197 (see fn. 2, ante, p. 897) also amended Probate Code section 583 to allow an executor to exercise an option given in a will. (Stats. 1963, ch. 338, § 1, pp. 1125-1126.) Section 583 provides the executor must exercise the option "pursuant to the provisions of this code." This requirement means an executor who chooses to exercise an option must do so in accordance within the time limitations set forth in section 854. This interpretation is consistent with that of the bill's author, Senator Grunsky (see fn. 2, ante, p. 897), who in his letter to Governor Brown states: "[T]he exercise of the option [by the executor] would be governed by the procedure set forth in Section 854 of the Code." As we have been unable to find anything either in the code or the legislative history to indicate the Legislature intended an executor as optionee be treated differently from any other optionee, it must be concluded the Legislature intended all optionees to be bound by the time constraints set forth in section 854.